Roger BRADFORD *v.* STATE of Arkansas

CR 97-113                                        953 S.W.2d 549

Supreme Court of Arkansas
Opinion delivered September 25, 1997

*Maxie G. Kizer,* for appellant.

*Winston Bryant*, Att'y Gen., by: *David R. Raupp*, Asst. Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. The appellant, Roger Bradford, appeals his judgment of conviction for delivery of a controlled substance, cocaine, as a habitual offender. He was sentenced to life imprisonment and given a $25,000 fine. For his sole point on appeal, Bradford contends that his right to a speedy trial was violated. We agree and reverse and dismiss.

On March 20, 1992, the Arkansas County Prosecuting Attorney filed an information against Bradford charging him with delivery of a controlled substance, cocaine, as a habitual offender. This charge encompassed a controlled-drug buy conducted in Dewitt on February 28, 1992. The case was styled "CR 92-28" in the Arkansas County Circuit Court, and was initially joined with other charges pending against Bradford on April 14, 1992.

While the record suggests that Bradford's trial for CR 92-28 was first set for June 10, 1992, what unfolds is a prolonged series of continuances and other delays, almost all caused by the appellant. The trial court granted over fifteen continuances at Bradford's request. At least seven different attorneys, both retained and appointed, represented Bradford at one point or another. While trial dates approached, Bradford engaged in a recurrent and eventually predictable pattern of attempts to have counsel relieved or fired. During two of several attempts to try Bradford on another charge, he attacked his own counsel. There is also evidence to suggest that Bradford feigned injury by falling down the courthouse stairs in yet another successful attempt at delay. The appellant even escaped from prison on the eve of a trial date.

Ultimately, Bradford was tried and convicted on June 27, 1996, where the jury imposed a life sentence. Bradford now brings the present appeal, arguing that he was denied his right to a speedy trial under Ark. R. Crim. P. 28, and that therefore his conviction should be reversed and dismissed.

For speedy-trial purposes, the time for bringing Bradford to trial began when the information was filed on March 20, 1992. Ark. R. Crim. P. 28.2(a). As it is apparent that Bradford's

trial was held outside of the applicable speedy-trial period found in Ark. R. Crim. P. 28.1, the burden is upon the State to show that the delay was the result of the defendant's conduct or was otherwise justified. *Tanner v. State*, 324 Ark. 37, 918 S.W.2d 166 (1996). The period of time between the filing of the information and the commencement of trial is 1,560 days. Thus, by the State's own calculation, it must exclude 1,195 days. Rule 28.3 provides a number of instances where time is excluded for speedy-trial purposes, including: (1) the period of delay resulting from other proceedings concerning the defendant; (2) the period of delay resulting from a continuance granted at the request of the defendant or his counsel; (3) the period of delay resulting from the absence or unavailability of the defendant; and (4) "[o]ther periods of delay for good cause."

The calculation of excluded time in this case is made difficult due to the trial court's failure to maintain a docket sheet or written orders memorializing all of the excluded periods in accordance with Ark. R. Crim. P. 28.3(i). The only docket sheet found in the record is attached as an exhibit to a writ of prohibition filed by Bradford, and the last entry on this docket sheet is dated August 18, 1993.

The trial court should enter written orders or make docket entries at the time a continuance is granted to detail the reason for the continuance, and to specify to a date certain the amount of excluded time. Ark. R. Crim. P. 28.3(c); *Hicks v. State*, 305 Ark. 393, 808 S.W.2d 348 (1991). Adherence to this principle is necessary "[i]n order to provide any impetus behind Rule 28.3 . . . otherwise, there is no need for the rule." *Id.* For example, in *Turbyfill v. State*, 312 Ark. 1, 846 S.W.2d 646 (1993), the trial court failed to enter a proper continuance indicating the reasons for a trial delay which was not requested by the defendant, resulting in a violation of the appellant's right to a speedy trial.

This is not to say that written orders or docket entries must always be contemporaneously made in order to exclude time for speedy-trial purposes. Even in *Hicks, supra*, the court observed that "when a case is *delayed by the accused* and that delaying act is memorialized by a record taken at the time it occurred, that rec-

ord may be sufficient to count as excluded time attributable to the defendant." (emphasis in original) (citing *McConaughy v. State*, 301 Ark. 446, 784 S.W.2d 768 (1990)). In these situations, the trial court's failure to comply with Rule 28.3(i) does not result in automatic reversal. For instance, in *Goston v. State*, 326 Ark. 106, 930 S.W.2d 332 (1996), the trial court did make some docket entries attributing a given time period to the appellant for speedy-trial purposes. However, the trial court correctly charged other delays to the defendant without a written order or notation, given that "the record clearly demonstrates that these [delays] were attributable to [the appellant] or were legally justified." *Id.* One example of this included a continuance granted at the appellant's request after he appeared for trial, claiming that the jury panel was tainted because some veniremen had witnessed a disturbance he created in a different case tried weeks earlier. Similarly, in *Lynch v. State*, 315 Ark. 47, 863 S.W.2d 834 (1993), the appellant filed a *pro se* motion to dismiss counsel prior to trial, and requested a hearing. The trial court held a hearing where it removed the attorney and appointed new counsel. This pretrial motion caused a delay in the trial, and the *Lynch* court held that the time period between the original trial date and the date of new counsel's appointment was properly excluded even without a written order or docket entry. Given that the delay was caused by the appellant and the reasons were contained in the contemporaneous record of the proceedings, the excluded period was "properly memorialized." *Id.; see also Jones v. State*, 323 Ark. 655, 916 S.W.2d 736 (1996) (delay due to sickness of trial counsel); *Foxworth v. State*, 263 Ark. 549, 566 S.W.2d 151 (1978) (continuance granted due to appellant's attack on counsel).

In short, where the delay is caused by the defendant, this court has demonstrated a willingness to exclude the time when there is at least some contemporaneous record of the proceedings reflecting the delaying act. Bearing this principle in mind, the excludable periods in the present case are as follows:

*May 15, 1992, to May 26, 1992 — 11 days.*

The docket-sheet entry for May 15, 1992, shows that an order was entered relieving attorney Kearney. On May 26, 1992,

attorney McCullough files a discovery motion on behalf of Bradford. This period, necessitating that Bradford obtain new counsel, is excludable. *See Lynch v. State, supra; Foxworth v. State, supra.*

The State would also exclude a period of time from May 28, 1992, to July 2, 1992, based primarily upon a chronology of events recited by the prosecutor at a jury trial on July 8, 1993. However, the State's version is not borne out by the contemporaneous record. The docket entry merely refers to a letter order dated May 29, 1992, resetting the case to July 30, 1992, without attributing the delay to the appellant. Further, since the record contains no copy of the order, we do not have the benefit of the contents of the letter order resetting the trial date. Thus, the contemporaneous record does not demonstrate that this delay in 1992 was attributable to the appellant, and the reasons for delay were not memorialized at the time of the occurrence. *See Hicks, supra.*

### *July 1, 1992, to February 24, 1993 — 238 days.*

On July 1, 1992, a docket-sheet entry for case number 92-28 shows that the case was continued at the defendant's request. In a letter order dated July 2, 1992, Bradford's trial is reset to November 17-20, 1992, at Bradford's request. On November 17, Bradford moves to continue, and the trial court issues a letter order dated November 18, 1992, continuing the case to January 28-29, 1993, at Bradford's request. The trial is later reset at Bradford's request to February 24, 1993, in a letter order dated January 29, 1993. Given that all of these continuances were granted at Bradford's request, they are excludable under Rule 28.3(c).

### *March 4, 1993, to May 20, 1993 — 77 days.*

At Bradford's request, his trial was reset to May 20-21, 1993, in a letter order dated March 4, 1993. This period can be excluded under Ark. R. Crim. P. 28.3(c).

The period of time between February 24, 1993, and March 4, 1993, is the first in a series of small gaps that the State would exclude "because they fall between two continuances at [Bradford's] request and the record shows nothing to suggest he wanted to go to trial in that. . . gap between his continuances." However,

we are unable to charge this period of time against Bradford because the record is utterly void of any explanation for the gap.

*July 8, 1993, to September 29, 1994 — 448 days.*

Bradford appeared for trial on July 8, 1993, and requested additional time to hire his own attorney. The trial court gave Bradford thirty days, and a letter order dated July 14, 1993, shows that the trial had been reset to September 2, 1993. At a pre-trial hearing on September 1, Bradford states that he is "not prepared to go to trial tomorrow," and the trial is continued at Bradford's request. This is followed by a letter order dated September 3, 1993, showing that the trial has been reset to October 7-8, 1993.

On October 6, 1993, Bradford escapes from prison and does not appear for trial on October 7, 1993. Bradford's trial is continued indefinitely in an order dated October 15, 1993, and the intervening time is charged to him for speedy-trial purposes. In a letter order dated April 21, 1994, Bradford's trial is reset to July 7, 1994, due to his escape. At a pretrial hearing on July 6, the parties discuss the status of the various pending charges. Bradford requests that a possession charge, CR 92-1, be severed for trial on July 7, and that the other charges be continued. The trial court grants Bradford's motion to sever and states that the other charges will be "reset as soon as possible."[1] In a letter order dated August 11, 1994, the case is reset to September 29, 1994.

This time period from July 8, 1993, to October 7, 1993, begins with continuances granted at Bradford's request, excludable under Rule 28.3(c), and continues with a period of excludable time due to Bradford's escape. Ark. R. Crim. P. 28.3(e). Once Bradford makes an appearance following his escape on July 6, the case is again continued at Bradford's request to September 29, 1994. Ark. R. Crim. P. 28.3(c).

---

[1] Meanwhile, the State attempted to try Bradford on CR 92-1 on July 7, 12, and 21, 1994. However, all of these trial dates were continued at Bradford's request.

*October 4, 1994, to November 14, 1994 — 41 days.*

In a letter order dated October 4, 1994, Bradford's trial is reset at his request to November 1, 1994. On October 12, 1994, the trial court issues a letter order setting the case for November 10, 1994, at Bradford's request. On November 3, 1994, attorney Pickell was relieved, and on November 14, 1994, attorney Howard filed a motion for discovery on Bradford's behalf.

The period of time from October 4, 1994, to November 10, 1994, is excludable at Bradford's request. Ark. R. Crim. P. 28.3(c). The overlapping period between November 3, 1994, and November 14, 1994, can be excluded due to the necessity that Bradford obtain counsel. *See Lynch v. State, supra; Foxworth v. State, supra.* The record contains no explanation of the gap between September 29, 1994, and October 4, 1994.

*November 21, 1994, to December 29, 1994 — 38 days.*

During this time period, the trial court issued a letter order dated November 21, 1994, resetting the case to December 29, 1994, at Bradford's request. This is chargeable to Bradford under Ark. R. Crim. P. 28.3(c). Again, it is impossible to glean from the record a reason for the delay from November 14, 1994, to November 21, 1994.

*January 4, 1995, to Fberuary 16, 1995 — 43 days.*

In a letter order dated January 4, 1995, the trial is continued at Bradford's request to February 16, 1995. Ark. R. Crim. P. 28.3(c). The record contains no explanation for the gap between December 29, 1994, and January 4, 1995.

*February 21, 1995, to May 11, 1995 — 79 days.*

In a letter order from the trial court dated February 21, 1995, Bradford's trial is reset to March 30, 1995, at his request. On March 30, the trial court issued a letter order resetting the case to May 11, 1995, at Bradford's request. On April 27, 1995, Bradford appears for trial on CR 92-1, where defense counsel Howard explains that he was attacked by Bradford prior to trial. Bradford

adds that he is not ready to proceed to trial. The trial court agrees to reset the trial on CR 92-1 to June 22, 1995, and appoints attorney Molock. On June 22, at the trial of CR 92-1, Bradford attacks attorney Molock. Nonetheless, Bradford is convicted.[2] On July 31, 1995, attorney Etoch is appointed to represent Bradford.

Here, the case is continued until May 11 at Bradford's request. Ark. R. Crim. P. 28.3(c). The State would also exclude a period of time at least from June 22 and extending to July 31, 1995, when attorney Etoch is appointed. However, we are unable to do so because there is no record of an order or hearing where the status of attorney Molock is taken up. Although Molock was attacked during his representation of Bradford at the June 22 trial of CR 92-1, the trial court nonetheless reiterated that attorney Molock would continue to represent Bradford after the trial. There is no subsequent record of whether Molock was relieved at any time before the appointment of attorney Etoch. Without such a record relieving Molock we are left to speculate as to whether there was any period of time during which Bradford was without counsel, thereby necessitating the appointment of new counsel. The gap between February 16, 1995, to February 21, 1995, is once again left unexplained by the record.

*June 22, 1995 — 1 day.*

On this day, Bradford was tried and convicted in CR 92-1. This is excludable under Rule 28.3(a).

*February 14, 1996, to June 27, 1996 — 134 days.*

On February 14, 1996, a pretrial hearing was held where the trial court continues the case and charges it to Bradford. In a letter order dated February 15, 1996, the trial court continues the case to June 27, 1996, at Bradford's request. This time can be excluded under Rule 28.3(c).

---

[2] This court affirmed his conviction in *Bradford v. State*, 328 Ark. 701, 947 S.W.2d 1 (1997).

In sum, only 1,110 days are excludable under Rule 28.3. Therefore, the State has failed to meet its burden to show that the delay was the result of the defendant's conduct or was otherwise justified. Accordingly, we are left with no choice but to reverse and dismiss.

Reversed and dismissed.

ARNOLD, C.J., AND GLAZE, J., concur.

TOM GLAZE, Justice, concurring. Appellant Roger Bradford is a habitual offender who fought against having a trial, especially a speedy one. He requested and was granted fifteen continuances. He feigned injury to avoid a trial and even escaped from incarceration on the eve of trial to avoid one. He had trouble with seven different attorneys who were retained or appointed to represent him, and he physically attacked one. To say the least, Bradford was uncooperative to those assigned to represent and defend him.

Notwithstanding Bradford's obvious reluctance to go to trial, this court, relying on its own Speedy Trial Rule 28, Arkansas Rules of Criminal Procedure, dismisses Bradford's conviction and charges because certain periods of delay had not been specifically documented by the trial judge as ones attributable to Bradford. Whether or not the trial judge failed in documenting the record in this case misses the real issue. Here, Bradford never desired nor requested a speedy trial, and the record reflects ever so clearly his efforts to avoid a trial.

Other justices and I have noted in the past that the United States Constitution does not require the rigid approach taken by this court's Rule 28. *See Weaver v. State*, 313 Ark. 55, 852 S.W.2d 130 (1993) (Hays and Glaze, JJ., dissenting); *Hicks v. State*, 305 Ark. 393, 808 S.W.2d 348 (1991) (Hays, Glaze, and Corbin, JJ., dissenting); *Asher v. State*, 300 Ark. 57, 776 S.W.2d 816 (1989) (Hickman, Hays, and Glaze, JJ., dissenting). The foregoing dissenting justices consistently cited *Barker v. Wingo*, 407 U.S. 514 (1972), and stated their beliefs that when determining a defendant's speedy-trial rights, this court should adhere to the constitutional principles set out by the Supreme Court rather than follow those directives contained in Rule 28. In *Barker*, the Supreme

Court set out the following four factors to be considered in determining if a defendant had been denied his or her right to a speedy trial: (1) length of delay, (2) the reason for delay, (3) the assertion of his right, and (4) prejudice to the defendant. *See also Doggett v. United States*, 505 U.S. 647 (1992). As gleaned from *Barker*, it is clear that to be entitled to dismissal of a criminal charge, a defendant is required to assert his or her right to a speedy trial after the defendant has been duly charged with a crime. *Cf. Doggett v. United States*, 505 U.S. 647 (1992) (where court held the defendant was denied a speedy trial when, unknown to him, he had been indicted, and more than eight years later he was arrested); *see also State v. Tipton*, 300 Ark. 211, 779 S.W.2d 138 (1989) (where court found defendant knew of his charges, but held he was denied a speedy trial after he announced ready to go forward with the trial, but was denied the right to proceed).

As discussed by Justice Hickman in his dissent in *Asher*, he criticized this court's speedy-trial rule because it ignores the factors in *Barker* concerning whether the defendant has asserted his right or whether he suffered prejudice due to a delay. He submitted that, in promulgating this court's speedy-trial rule, the court had overstepped its constitutional authority and adopted a substantive rather than a procedural rule. Hickman noted that, in the federal realm, Congress, rather than the judiciary, had established the law involving speedy trials. That federal law is codified in 18 U.S.C. §§ 3161–3174 (1994), and while § 3161 of that law sets out time limits and exclusions, § 3162 ameliorates any harshness in dismissing charges by giving the trial court discretion whether to dismiss with or without prejudice. In exercising that discretion, the trial court must consider, among other factors, (1) the seriousness of the crime, (2) the facts and circumstances of the case which led to the dismissal, and (3) the impact of a reprosecution on the administration of justice.

Finally, I mention other jurisdictions with laws or rules that make more sense than Rule 28. For example, the Missouri legislature enacted Mo. Ann. Stat. § 545.780 (Vernon 1986) which provides that, if the defendant announces that he is ready for trial and files for a speedy trial, the court then shall set the case for trial as soon as reasonably possible. This speedy-trial request is

enforceable by mandamus, but failure to comply with the speedy-trial provision is not grounds for dismissal unless the court also finds the defendant has been denied his constitutional right to a speedy trial.

Wyoming is another example of a simple speedy-trial provision that implements the factors in *Barker*. *See* Rule 48 of the Wyoming Rules of Criminal Procedure. Rule 48 requires a trial within 120 days following arraignment and sets out certain excludable periods. But it also provides that a dismissal for lack of a speedy trial shall not bar the state from again prosecuting the defendant for the same offense unless the defendant made a written demand for a speedy trial or can demonstrate prejudice from any delay. For another example of a provision that better follows the balancing test in *Barker* than Arkansas's rule, *see* North Carolina Criminal Procedure Act, N.C. Gen. Stat. § § 15A-702-704 (1993).

In sum, the present case illustrates how this court's speedy-trial rule can be manipulated by a defendant who simply wants to avoid prosecution. It is time this court rectifies Rule 28's weaknesses and its failure to meet the real constitutional objectives which are designed to protect those defendants who actually seek and are entitled to a prompt trial.

While I continue to strongly disagree with this court's speedy-trial rule, that rule remains Arkansas law concerning a defendant's speedy-trial rights. The majority court's analysis and result is in compliance with Rule 28's dictates, thus, I reluctantly join in the court's holding. However, I hope the court will revisit Rule 28 and make appropriate changes so the court can avoid needless dismissals of serious charges in the future; especially those dismissals of charges against defendants who are as undeserving as Bradford has shown to be in this case.

ARNOLD, C.J., joins this concurrence.