Johnny Paul DODSON *v.* STATE of Arkansas

CR 02-878 191 S.W.3d 511

Supreme Court of Arkansas
Opinion delivered September 16, 2004

[Rehearing denied October 21, 2004.]

*Hurst & Morrissey, P.L.L.C.*, by: *Q. Byrum Hurst, Jr.*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Clayton K. Hodges*, Ass't Att'y Gen., for appellee.

*Jeff Rosenzweig*, for respondent, Q. Byrum Hurst, Jr.

DONALD L. CORBIN, Justice. Appellant Johnny Paul Dodson appeals the order of the Garland County Circuit Court convicting him of possession of methamphetamine with intent to deliver and possession of marijuana. On appeal, Appellant alleges that the trial court erred in (1) denying his motion to dismiss because of a speedy-trial violation; (2) denying his motion for a directed verdict; (3) denying his motion for continuance; (4) failing to require the State to produce a witness that he requested; and (5) allowing the State to admit certain prior convictions for sentence-enhancement purposes. Because Appellant was sentenced as a habitual offender to life in prison, our jurisdiction of this case is pursuant to Ark. Sup. Ct. R. 1-2(a)(2). We find no error and affirm.

The record reveals that on October 29, 1998, law enforcement officials conducted an undercover sting operation, after one of their informants, Sherry Lewis, informed officers that Appellant was selling methamphetamine. Lewis contacted Appellant and invited him and his girlfriend, Karen Humes, to meet her and her boyfriend at a local motel. Her "boyfriend" was actually an undercover Arkansas State Police Officer, Scotty Dodd. At some point after arriving at the motel, Humes handed Appellant a black bag, and he removed marijuana and a white powdery substance from the bag. Appellant then rolled a marijuana cigarette, which was passed among the four people in the motel room. According to Dodd, Appellant cut up for "[a]pproximately an hour and thirty (30) minutes, hour and forty-five minutes" and then read a poem about methamphetamine use. Finally, Appellant told Dodd that he had sold some of the methamphetamine prior to arriving at the motel but that he had twenty-seven grams remaining that Dodd could purchase for $900. These events were tape recorded by officers who had set up surveillance in an adjoining motel room. After Appellant offered to sell the methamphetamine, the officers entered the motel room and arrested Appellant and the others. The evidence seized from the motel room included marijuana, the white powdery substance, later identified as sixteen grams of methamphetamine, and a small set of digital scales.

Appellant was initially charged by felony information with delivery of a controlled substance and possession of a controlled substance. The information was later amended several times, and Appellant was finally charged with possession of a controlled substance, methamphetamine, with intent to deliver and posses-

sion of a controlled substance, marijuana. He was also charged as a habitual offender, having been convicted of four or more felonies.

Appellant was tried before a jury on February 27, 2002. He was found guilty of all charges. He received a sentence of life imprisonment in the Arkansas Department of Correction on the charge of possession of methamphetamine with intent to deliver. He was also sentenced to a term of one-year imprisonment and a $1,000 fine on the misdemeanor charge of possession of marijuana. From that order comes the instant appeal.

## I. Sufficiency of the Evidence

Appellant raises five points of error in his appeal. The second point raised is that the trial court erred in denying his motion for a directed verdict, because there was insufficient evidence supporting his conviction. For purposes of double jeopardy, we address Appellant's challenge to the sufficiency of the evidence first. *See Grillot v. State,* 353 Ark. 294, 107 S.W.3d 136 (2003). With regard to this point, Appellant specifically argues that there was insufficient evidence supporting his conviction on the charge of possession of methamphetamine with intent to deliver, because there was no evidence of any negotiations for the purchase of a controlled substance, nor was there any payment or delivery of a controlled substance. The State counters that there was sufficient evidence of Appellant's intent. The State is correct.

This court treats a motion for directed verdict as a challenge to the sufficiency of the evidence. *Benson v. State,* 357 Ark. 43, 160 S.W.3d 341 (2004); *Tester v. State,* 342 Ark. 549, 30 S.W.3d 99 (2000). When reviewing the denial of a directed-verdict motion, we will look at the evidence in the light most favorable to the State, considering only the evidence that supports the verdict and will affirm if there is substantial evidence to support the jury's conclusion. *Burmingham v. State,* 342 Ark. 95, 27 S.W.3d 351 (2000). Substantial evidence is that which is forceful enough to compel reasonable minds to reach a conclusion one way or the other and permits the trier of fact to reach a conclusion without having to resort to speculation or conjecture. *Greene v. State,* 335 Ark. 1, 977 S.W.2d 192 (1998).

This court has held that in order to convict a person of possessing contraband, the State must show that the defendant exercised control or dominion over it. *Stanton v. State,* 344 Ark.

589, 42 S.W.3d 474 (2001); *Pyle v. State*, 314 Ark. 165, 862 S.W.2d 823 (1993), *cert. denied*, 510 U.S. 1197 (1994). Here, there was ample evidence that Appellant exercised dominion or control over the methamphetamine. Dodd testified that when Appellant and Humes arrived at the motel room, Humes took a black bag out of her purse and gave it to Appellant. Appellant then took from the bag some marijuana, methamphetamine, and a set of digital scales. Appellant then proceeded to roll a marijuana cigarette, which he passed among the other people in the room. Finally, Appellant stated that he had already sold some of the methamphetamine before arriving at the motel but offered to sell the remainder to Dodd for $900. In addition to presenting the testimony of Dodd, the State also introduced into evidence the tape recording of the events that transpired in the motel room. This tape combined with Dodd's testimony constitute sufficient evidence that Appellant exercised dominion and control over the methamphetamine.

■ Furthermore, there is substantial evidence that Appellant possessed the methamphetamine with intent to deliver it. Arkansas Code Annotated § 5-64-401(d) (Repl. 1997) creates a rebuttable presumption that possession of more than 200 milligrams of methamphetamine demonstrates an intent to deliver. *See Stanton*, 344 Ark. 589, 42 S.W.3d 474; *Marts v. State*, 332 Ark. 628, 968 S.W.2d 41 (1998). Here, the bag contained sixteen grams of methamphetamine, an amount well in excess of the statutory presumption, and Appellant presented no evidence to rebut that presumption. Additionally, as stated above Appellant offered to sell the methamphetamine to Officer Dodd. Accordingly, there is substantial evidence of intent to deliver. *Id.*; *Heritage v. State*, 326 Ark. 839, 936 S.W.2d 499 (1996).

## II. Speedy-Trial Violation

Appellant next argues that the trial court erred in failing to grant his motion to dismiss on the basis of a speedy-trial violation. He specifically claims that the period from October 11, 1999, through January 13, 2000, should not be charged to him, because he was incarcerated in St. Francis County during that time. According to Appellant, the State had notice of his location and, thus, had a duty to make a diligent effort to bring him to trial. Because we agree with the State that there was no speedy-trial violation, Appellant's argument in this regard is irrelevant.

■ Pursuant to Ark. R. Crim. P. 28.1, the State is required to try a criminal defendant within twelve months, excluding any periods of delay authorized by Ark. R. Crim. P. 28.3. *Romes v. State*, 356 Ark. 26, 144 S.W.3d 750 (2004); *Moody v. Arkansas County Circuit Court*, 350 Ark. 176, 85 S.W.3d 534 (2002). This means that the accused must be tried within twelve months of the date the charges were filed, except that if prior to that time the defendant has been continuously held in custody, or has been lawfully at liberty, the time for trial commences running from the date of arrest. *Id.*; *see also* Ark. R. Crim. P. 28.2.

■ If a defendant is not brought to trial within the requisite time, Ark. R. Crim. P. 30.1 provides that the defendant will be discharged, and such discharge is an absolute bar to prosecution of the same offense and any other offense required to be joined with that offense. *Romes*, 356 Ark. 26, 144 S.W.3d 750; *Moody*, 350 Ark. 176, 85 S.W.3d 534. Once the defendant presents a *prima facie* case of a speedy-trial violation, *i.e.*, that the trial is or will be held outside the applicable speedy-trial period, the State has the burden of showing that the delay was the result of the defendant's conduct or was otherwise justified. *Id.*; *Ferguson v. State*, 343 Ark. 159, 33 S.W.3d 115 (2000).

■ Appellant was arrested on October 29, 1998, and was not brought to trial until February 27, 2002, or 1,217 days after his arrest. Because Appellant does not challenge the period of time beyond the date of his motion to dismiss, it is unnecessary for this court to conduct a review of the entire 1,217 day period; rather we limit our review from the date of Appellant's arrest until March 5, 2001, the date on which Appellant filed a motion for reconsideration of his motion to dismiss. This period totals 858 days; thus, because Appellant has made a *prima facie* showing of a speedy-trial violation, the State must account for 493 days that exceed the allowable twelve-month period under our speedy-trial rule.[1] We now turn to the periods of time proven by the State to be excludable.

---

[1] The State mistakenly argues that it must account for a total of 919 days, based on its erroneous conclusion that Appellant filed his second motion to dismiss on May, 5, 2001, when it was actually filed on March 5, 2001.

### A. August 3, 1999 — October 14, 1999

Appellant's trial was initially set for August 24, 1999. On August 3, Appellant filed a motion requesting a continuance. The trial court entered an order on August 5, continuing the trial until October 14. That order reflected that the continuance was chargeable to Appellant, for a total of seventy days. This court has repeatedly held that delays resulting from continuances requested by the defendant or defense counsel are excluded from the calculation of the speedy-trial period. *See, e.g., Romes,* 356 Ark. 26, 144 S.W.3d 750; *Gamble v. State,* 350 Ark. 168, 85 S.W.3d 520 (2002); *Camargo v. State,* 346 Ark. 118, 55 S.W.3d 255 (2001). In addition, the period from August 3 until August 5, when Appellant's motion was pending is a period properly excluded under Ark. R. Crim. P. 28.3(a). As this court stated in *Gwin v. State,* 340 Ark. 302, 9 S.W.3d 501 (2000), the period of delay attributable to a hearing on a pretrial motion is excludable. Thus, the State has established that seventy-two days are properly excludable.

### B. December 28, 1999 — January 10, 2000

As previously stated, Appellant filed a motion to dismiss based on the State's amended information charging Appellant with one count of failure to appear.[2] This motion was filed on December 28, 1999. It was then withdrawn by Appellant on January 10, 2000, after it was rendered moot by the State's dismissal of the failure-to-appear charge. Pursuant to Rule 28.3(a), however, the period from December 28 until January 10 is properly excludable as a period of delay attributable to a hearing on a pretrial motion. *See also Gwin,* 340 Ark. 302, 9 S.W.3d 501. Thus, the State has established that this thirteen-day period is excludable.

### C. January 10, 2000 — May 25, 2000

On January 10, 2000, Appellant again filed a motion to dismiss, newly alleging that his right to a speedy trial had been violated and, thus, the charges against him should be dismissed. This court has held that the date the speedy-trial motion is

---

[2] The State mistakenly characterizes this motion as a motion to dismiss based on a speedy-trial violation and, thus, argues that the time for speedy-trial calculation was tolled as of the date this motion was filed.

filed by a defendant tolls the running of the time for speedy trial under our rules. *See Zangerl v. State*, 352 Ark. 278, 100 S.W.3d 695 (2003); *Doby v. Jefferson County Circuit Court*, 350 Ark. 505, 88 S.W.3d 824 (2002); *Moody*, 350 Ark. 176, 85 S.W.3d 534. No order was entered, however, on the motion to dismiss until November 7, 2000. Nonetheless, Appellant also filed a motion for a continuance on January 10, noting his awareness that the continuance would be charged to him. The trial court granted the continuance and rescheduled Appellant's trial for May 25, 2000. As previously stated, delays resulting from continuances requested by the defendant or defense counsel are excluded from the calculation of the speedy-trial period. *Romes*, 356 Ark. 26, 144 S.W.3d 750. Thus, the period from January 10 until May 25, a period of 136 days is properly excluded from the speedy-trial calculation, as a continuance granted at the request of Appellant.

### D. May 25, 2000 — March 5, 2001

 Appellant again sought a continuance on May 23, 2000, which was granted in an order entered on May 24 that rescheduled Appellant's trial for November 7, 2000. In anticipation of the November 7 trial date, Appellant sought another continuance on November 6, 2000. His motion was granted on that same day and his trial was rescheduled for March 7, 2001. Prior to this trial date, Appellant filed his motion for reconsideration on his motion to dismiss on March 5, 2001. Thus, the time for speedy trial was tolled as of the filing of this motion. Because each of the periods from May 23 are attributable to continuances sought by Appellant, it is unnecessary for this court to calculate each one separately. Calculating the time from May 25, 2000, the last counted excludable period, until the March 5 filing of the renewed motion to dismiss reveals that this period consists of 284 days. This period of time is excludable as continuances granted at the request of Appellant. *See Romes*, 356 Ark. 26, 144 S.W.3d 750. Combining this excludable period with the previously determined excludable periods of 72 days, 13 days, and 136 days, reveals that the total number of days properly excluded from the speedy-trial calculation equals 505 days. As stated at the outset of our analysis, the State was required to account for only 493 days; thus, there was no speedy-trial violation.

### III. Continuance

For his third point on appeal, Appellant argues that the trial court erred in denying his motion for a continuance, because he showed good cause for the continuance in that his counsel had been tied up in a jury trial the previous day in Pulaski County and he needed time to find a witness who had been a part of the undercover operation that led to Appellant's arrest. The State counters that Appellant has improperly changed the scope of his argument on appeal and that he cannot show the required prejudice from the trial court's denial of his motion for continuance. We agree with the State.

A motion for continuance is addressed to the discretion of the trial court and will not be reversed absent an abuse of discretion. *Ellison v. State*, 354 Ark. 340, 123 S.W.3d 874 (2003); *Greene*, 335 Ark. 1, 977 S.W.2d 192. The burden of proving an abuse of discretion due to prejudice resulting from the denial of a continuance is on Appellant, and Appellant must demonstrate prejudice before this court will consider a trial court's denial of a continuance to be an abuse of discretion. *Id*.

In the present case, Appellant appears to be arguing two different grounds as to why the trial court should have granted the continuance. First, Appellant argues that he needed more time to obtain the presence of a witness, Sherry Lewis, because she was part of the transaction and helped arrange for Appellant to be in the motel room at the time of his arrest. As the State points out, however, when Appellant sought the continuance before the trial court, he argued that he needed additional time to obtain the presence of a different witness, Jimmy Linderman. He makes no argument on appeal, however, that the trial court erred in refusing to continue the trial until Linderman's presence could be obtained. It is axiomatic that a party may not change his argument on appeal and is limited to the scope and nature of the argument made below. *Hunter v. State*, 330 Ark. 198, 952 S.W.2d 145 (1997); *Stewart v. State*, 320 Ark. 75, 894 S.W.2d 930 (1995). Thus, Appellant's argument on this point fails.

With regard to his other basis for the continuance, namely that his counsel did not have adequate time to prepare for trial because he was tied up in another trial the day before, it is also without merit. When a motion for continuance is based on a lack of time to prepare, this court considers the totality of the circum-

stances. *Smith v. State*, 352 Ark. 92, 98 S.W.3d 433 (2003). The record reveals that Appellant was arrested on October 29, 1998, but that he was not tried until February 27, 2002. Counsel for Appellant was aware that he had two jury trials scheduled on back-to-back days, and admitted that the instant case was scheduled prior to the jury trial in Pulaski County. Appellant sought and received numerous continuances during the lengthy time between his arrest and his trial date. In denying his motion, the trial court ruled in part:

> Well, our case was set first. If your motion to continue [the Pulaski County] trial had been denied, I might be more sympathetic, or if we had been notified ahead of time that there was a problem there. But at this point I'm denying the motion. This is a 1998 case. This is 2002. We're going.

We cannot say that the trial court abused its discretion with regard to this ruling. This case had been pending for over three and one-half years, due in large part to the repeated continuances sought by Appellant. Counsel for Appellant had notice of the two trial dates, but failed to file a timely continuance in either one.

### IV. Production of Witness

For his next point of error, Appellant argues that the trial court erred in failing to require the State to produce a witness that he requested. Specifically, Appellant argues that the State knew the location of Sherry Lewis and should have provided him with that information. The State counters that they did not know the location of the witness and, thus, there is no error on this point. Moreover, the State avers that Appellant received the relief he requested.

Prior to trial, Appellant made known his desire to call Lewis as a defense witness, as she was the person who contacted him and set up the meeting at the motel on the night of his arrest. The trial court, in turn, ordered the State to notify Appellant of Lewis's whereabouts, if the State possessed such information. The State informed the court that it had no knowledge of Lewis's whereabouts and, in fact, because she was a confidential informant, her name was not even listed in Appellant's case file. Again, just prior to trial, Appellant argued that the State had an obligation to notify him of Lewis's whereabouts. The State again averred that it had no knowledge of her location, nor did the police officers involved in

the case. The trial court once again ordered the State to inquire of the officers if they had any knowledge of Lewis's whereabouts. In fact, contrary to Appellant's assertion on appeal, Officer Dodd testified at trial that he had no idea where Lewis was at that time. Dodd stated that at the time of the undercover operation, some three years earlier, Lewis had been charged with a traffic violation in Mena. This testimony was not, as Appellant argues, proof that the State knew where Lewis was located at the time of trial.

In sum, Appellant received the relief he requested. He requested that the State produce information about a witness. The court agreed with Appellant and ordered the State to comply, if it had the pertinent information. Where a party receives the relief he requested, he cannot be said to have suffered prejudice. *See Barnes v. State*, 346 Ark. 91, 55 S.W.3d 271 (2001). The fact that the State did not have the information Appellant desired does not mean that Appellant suffered prejudice. In order to obtain a reversal of a criminal conviction on the basis of a discovery violation, the appellant must make a showing of prejudice. *Smith*, 352 Ark. 92, 98 S.W.3d 433. Because Appellant cannot show that he was prejudiced, his argument on this point fails.

*V. Sentence Enhancement*

For his final point on appeal, Appellant argues that it was error for the trial court to use certain convictions to enhance his sentence in the present case under the Arkansas Habitual Offenders Statute, codified at Ark. Code Ann. § 5-4-501 (Supp. 2001). Specifically, Appellant argues that some of the convictions were too old, while others occurred after the date of the offenses in this case. The State argues that Appellant's argument on this point is without merit, as the habitual-offender statute allows use of prior convictions regardless of when they occurred. We agree with the State.

Section 5-4-501 provides in relevant part:

(a)(1) A defendant meeting the following criteria may be sentenced to an extended term of imprisonment as set forth in subdivision (a)(2) of this section:

(A) A defendant who is convicted of a felony other than those enumerated in subsections (c) and (d) of this section committed after June 30, 1993, and who has previously been

convicted of more than one (1) but fewer than four (4) felonies or who has been found guilty of more than one (1) but fewer than four (4) felonies[.]

In applying the habitual-offender statute, this court has held that the date of the commission of an offense being used to enhance a sentence under section 5-4-501 is not relevant. *Parker v. State*, 355 Ark. 639, 144 S.W.3d 270 (2004); *Jones v. State*, 347 Ark. 455, 65 S.W.3d 402, *cert. denied*, 536 U.S. 909 (2002); *Beavers v. State*, 345 Ark. 291, 46 S.W.3d 532 (2001). In *Beavers*, this court pointed out that provisions of the habitual-offender statute are not deterrent in nature, but rather are punitive, so that a prior conviction regardless of the date of the crime may be used to increase punishment. *See also Gillie v. State*, 305 Ark. 296, 808 S.W.2d 320 (1991); *Washington v. State*, 273 Ark. 482, 621 S.W.2d 216 (1981).

Appellant first argues that a number of the convictions used to enhance his sentence occurred more than ten years prior to the offenses in this case and, thus, should not be used for enhancement purposes. Appellant cites to no authority, nor is this court aware of any, that stands for the proposition that a conviction ten years or older cannot be used to enhance a sentence. The habitual-offender statute certainly sets forth no such time limit. In the absence of any convincing authority, we decline to address Appellant's argument on this point. *See Walls v. State*, 341 Ark. 787, 20 S.W.3d 322 (2000).

With regard to Appellant's contention that it was improper to use those convictions that occurred after the offenses in this case, it is also without merit. The offenses Appellant complains of did occur after the offenses in this case, but Appellant was convicted of those offenses prior to his conviction in the present case. Thus, the trial court did not err in using those prior convictions to enhance Appellant's sentence in this case.

## VI. Rule 4-3(h) Review

In accordance with Ark. Sup. Ct. R. 4-3(h), the transcript of the record before us has been reviewed for adverse rulings objected to by Appellant, but not argued on appeal, and no such reversible errors were found.

Affirmed.